**BURSOR & FISHER, P.A.**
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Matthew A. Girardi (*PHV* application forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mgirardi@bursor.com

*Additional Counsel on Signature Page*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| KACEY WILSON, individually and on behalf of all other persons similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>REVOLUTION BEAUTY, INC.,<br><br>       Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kacey Wilson ("Plaintiff") brings this Class Action against Revolution Beauty, Inc. ("Revolution" or "Defendant"), individually and on behalf of all others similarly situated. The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## NATURE OF THE ACTION

1.      This is a civil class action concerning Defendant's design, formulation, manufacture, marketing, advertising, distribution, and sale of eye makeup that contains color additives and ingredients that are dangerous when used on the immediate eye area.

2.      The products at issue include eyeshadow palettes (which Defendant sometimes refers to and promotes as, inter alia, "shadow palettes," "pigment palettes," or "pressed powder palettes") that are formulated with and/or contain certain color additives that are not safe for use in the eye area (collectively "Revolution Eye Makeup" or "Products").

3.      Regardless of what Defendant calls each Revolution Eye Makeup Product, they are misleadingly marketed and sold by Defendant as eyeshadow or eye makeup. Defendant's marketing, advertising, public statements, and social media posts and videos encourage and instruct consumers to use the Products in the eye area, and the only reasonable and foreseeable use of the Products is cosmetic application in the eye area. Thus Revolution misrepresents the purpose of the Products and misleads consumers that the Products are intended for use in the eye area when they are unsafe and unfit for use in that manner. Revolution's practices in this regard are substantially similar across all of the Products at issue.

4.      The Products are inherently dangerous because they are formulated with and/or contain the following color additives: FD&C Red No. 4; D&C Red No. 6, 7, 17, 21, 22, 27, 28, 30, 31, 33, 34, 36; D&C Violet No. 2; Ext. D&C Violet No. 2; FD&C Yellow No. 6; D&C Yellow No. 7, 8, 10, 11; Ext. D&C Yellow No. 7; D&C Orange No. 4, 5, 10, 11; D&C Green No. 6, 8; FD&C Green No. 3; D&C Brown No. 1; and/or D&C Blue No. 4 (the "Harmful Ingredients").[1]

---

[1] Here, and throughout, the term "Products" shall refer to any item sold by Defendant for use in the eye area that contains one or more Harmful Ingredients. The Products include, but may not be limited to, the following palette names: "Tropical Twilight", "Tropical Carnival," "Affinity," "Utopia," "Spirituality," "Flamboyance Flamingo," "I Heart Revolution Burger Shadow Palette," "Bird of Paradise," "Candy Haze," "Chilled," "Good Vibes Chilled Vibes," "Ultra Violette

5.      The Harmful Ingredients can cause physical injuries including eye pain, redness, itching, skin irritation, rashes, and skin staining, and can cause damage through their toxicity when they enter the body.  For example, Red 7 has been known to cause "serious eye irritation."[2]  Red 27 is classified as acutely toxic if consumed orally, "causes eye irritation"[3] and "may be cytotoxic, mutagenic, and inhibit certain mitochondrial functions."[4]  Red 28 is classified as acutely toxic if consumed orally and "[c]auses serious eye irritation."[5] Yellow 6 is "hazardous in case of eye contact (irritant)" and is acutely toxic when orally ingested.[6]  Yellow 10 is also acutely toxic when ingested and associated with eye irritation.[7]

6.      The presence of one or more Harmful Ingredients renders the Products unsafe and unfit for use in the eye area (the "Defect").

7.      Defendant markets Revolution Eye Makeup for a purpose (cosmetic application around the eye area) for which such use is inherently dangerous.  The Products cannot be used for their principal intended purpose.  The Products are thus worthless by virtue of the Defect.

8.      Defendant has undertaken a deliberate and willful pattern of conduct (including taking active measures) aimed at deceiving consumers, including Plaintiff, into believing that Revolution Eye Makeup is safe for its intended use: cosmetic application around the eye area.

9.      At all relevant times, Defendant knew about the Defect, but nevertheless marketed, advertised, and sold Revolution Eye Makeup for use around the eyes without warning consumers of the known dangers.

10.      As a direct and proximate result of Defendant's misleading conduct, concealment of the Defect, and failure to adequately warn consumers about the presence of the Harmful

---

Reflective Palette," "Mesmerized, Ambient," "Velvet Rose," "Animal Ego," "Pro Ultimate Crystal Shadow," "Animal Magic," "Coca Cola," "Coca Cola Mini," "Disney Fairytale," and "Tasty Grilled Cheesy Burger."

[2] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.007LC0-SDS.pdf.

[3] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.027LM0-SDS.pdf.

[4] https://pubchem.ncbi.nlm.nih.gov/compound/D-_-C-Red-no.-27.

[5] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.028000-SDS.pdf.

[6] https://www.geneseo.edu/sites/default/files/users/247/Yellow%206.pdf.

[7] https://www.spectrumchemical.com/media/sds/DC200_AGHS.pdf.

Ingredients and the fact that the Products are not safe or fit for use in the eye area, Plaintiff and other similarly situated consumers ("Class" or "Class Members") purchased and/or used the Product to their detriment.

11.    Plaintiff and putative Class Members were unaware of the Defect at the time they purchased the Products.  Had Plaintiff and Class Members known that Revolution Eye Makeup contains a Defect rendering it unfit for its intended purpose – use in the eye area – they would not have purchased the Products or would have paid substantially less for the Products.

12.    Plaintiff and all putative Class Members purchased Revolution Eye Makeup which suffered from the same Defect at the point of sale, and poses substantially the same safety risk to Plaintiff, putative Class Members, consumers, and the public.

13.    All of the Products suffer from the same Defect and are similarly mislabeled and falsely advertised because each of the Products is sold to be indistinguishable from eyeshadow or eyeliner products yet is unfit for use in the eye area due to the presence of the Harmful Ingredients.

14.    Plaintiff and each putative Class Member have been damaged and suffered an injury in fact caused by Defendant's false, fraudulent, unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and injunctive relief.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Class is a citizen of a State different from the Defendant.

16.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, because Defendant transacts business and/or has agents within this District.

**PARTIES**

18.     Plaintiff Kacey Wilson is a resident of San Francisco, California, who purchased and used Revolution Eye Makeup within the relevant time period.  Specifically, Plaintiff Wilson purchased and used Revolution's "I Heart Revolution Burger Shadow Palette" eyeshadow palette, which contains the Harmful Ingredients and thus suffers from the Defect. Upon discovering that the I Heart Revolution Burger Shadow Palette contains Harmful Ingredients, Plaintiff stopped using the Product and still has unused Product in her possession.  Because of the Defect, Plaintiff cannot use the remaining Product and, accordingly, suffered economic loss.

19.     Revolution Beauty, Inc. ("Revolution) is a corporation organized under the laws of Delaware, with its headquarters located in Illinois. Revolution designs, formulates, manufactures, markets, advertises, distributes, and sells a wide range of consumer cosmetic products, including but not limited to eyeshadow, eyeliner, eyelid primer, and eyebrow pencils, nationwide, including in Illinois and California.[8]

**THE PRODUCTS**

20.     Revolution Eye Makeup is sold at retail locations throughout the United States, including Ulta Beauty stores, and the Products are also available for purchase online at www.Revolution.com and through third-party retailers' websites.[9]

21.     The Products that are the subject of this lawsuit include eyeshadow palettes (which Defendant sometimes refers to as, inter alia, "shadow palettes," "pigment palettes," or "pressed powder palettes"), and other categories of products that Defendant has promoted or advertised for use in the eye area during the maximum time period allowed by law.

22.     Defendant's conduct was substantially similar with regard to the Products.  The Products all: (1) are advertised and marketed by Defendant for cosmetic use on the eye area; (2) are advertised, marketed, packaged, and sold to be indistinguishable from eyeshadow or eyeliner products (3) are reasonably understood by consumers to be safe and suitable for use in the eye area; (4) are in fact unfit, unsafe, and unsuitable for use in the eye area.  Defendant invented terms for

---

[8] *See generally* https://www.revolutionbeauty.us/ (last accessed May 2, 2023).
[9] https://www.ulta.com/brand/Revolution (last accessed July 29, 2022).

the Products such as, inter alia, "shadow palettes," "pigment palettes," or "pressed powder palettes," but each of the Products is intended for use in the eye area.

23.     In all cases for the Products, despite Defendant's invented names, Defendant intentionally and deceptively designed the Products to be indistinguishable from products that are *exclusively* for use in the eye area, and did indeed market the Products for use in the eye area.

***Defendant's Eyeshadow Palettes***

24.     There are currently over 200 different variations of Revolution Eyeshadow Palettes available for purchase at www.revolutionbeauty.us/makeup/eyes/eyeshadow-palettes.list, many of which are formulated with and contain color additives that are prohibited for use around the eye area.

25.     The price of Revolution Eyeshadow Palettes can range from approximately $3.00 to $45.00.  Each product contains between 4-35 distinct colors or shades ("Color Pans") which Revolution often refers to as "Shadow Palettes" or "Color Palettes."

26.     But regardless of what Revolution calls each eyeshadow palette Product, they are intentionally marketed and sold to be indistinguishable from eyeshadow or eye makeup, their only reasonable and foreseeable use by consumers is cosmetic application in the eye area, and Defendant's promotional images, tutorials, and other advertising materials instruct and encourage that said Products be used for cosmetic application in the eye area.  Revolution's practices in this regard are substantially similar across all of the Products at issue.  This is the crux of Defendant's misleading conduct: Defendant sells Products that should not and cannot be used in the eye area, yet markets the Products such that their sole reasonable and foreseeable use by consumers is cosmetic application in the eye area.

27.     Previously, and for the majority of the class period, **all** "Color Palettes" sold on the Revolution website were found under the "Eyes" subcategory of the "Makeup" category.  On the "Color Palettes" page of its website, Revolution stated "We believe that everyone should be able to afford high quality **eye makeup palettes**, which is why our range features everything from everyday nudes, to bold and bright pigments that work on all skin tones and are perfect for any occasion. Shop all of our **eyeshadow palette brands** including XX REVOLUTION, MAKEUP

OBSESSION and MAKEUP REVOLUTION EYESHADOW PALETTES below."[10]  (emphasis added). Revolution also identified Products as "Eyeshadow Palettes."[11]



---

[10] https://www.revolutionbeauty.us/makeup/eyes/eyeshadow-palettes.list (screenshot showing site as of July 29, 2022).

[11] https://www.revolutionbeauty.us/tammi-tropical-twilight-eye-shadow-palette/12657095.html (screenshot showing site as of February 21, 2022).



28.     Since receipt of a demand letter from Plaintiff, Revolution has updated its website in an apparent attempt to cure the false advertising.  "Color Palettes" are now listed under their own category, separately from "eyes."[12]



29.     However, the URL for the "Color Palettes," still can be found at https://www.revolutionbeauty.us/makeup/eyes/eyeshadow-palettes.list, and the tags below the description still reference eye area use[13]:

---

[12] https://www.revolutionbeauty.us/makeup/eyes/eyeshadow-palettes.list (last visited October 4, 2022)

[13] https://www.revolutionbeauty.us/makeup/eyes/eyeshadow-palettes.list (screenshot taken May 2, 2023).



**THE PRODUCTS ARE UNSAFE AND UNFIT FOR USE IN THE EYE AREA DUE TO THE PRESENCE OF THE HARMFUL INGREDIENTS**

30.     Defendant has engaged in unfair, unlawful, and fraudulent business conduct by formulating, manufacturing, distributing, marketing, advertising, and selling Revolution Eye Makeup because the Products: (1) contain color additives that make them unreasonably dangerous for their sole and intended purpose; and (2) are intentionally marketed and sold to be indistinguishable from eyeshadow or eye makeup, their only reasonable and foreseeable use by consumers is cosmetic application in the eye area, and Defendant's promotional images, tutorials, and other advertising materials instruct and encourage that said Products be used for cosmetic application in the eye area.

31.     Each of the Products is formulated with and contains one or more Harmful Ingredients that render the Products unsafe, unfit, and inherently dangerous to use in the eye area. Yet each of the Products is intentionally marketed and sold by Revolution to be indistinguishable from eyeshadow or eye makeup, the only reasonable and foreseeable use of the Products by

consumers is cosmetic application in the eye area, and Defendant's promotional images, tutorials, and other advertising materials instruct and encourage that said products be used for cosmetic application in the eye area.

32.    The eye area, both the eye itself and surrounding skin in the eye area, are more permeable than the skin generally.  Risks associated with an ingredient that may be tolerable for a product designed for use on the face may become intolerable if the product is used in the eye area due to this potential increased absorption of ingredients.

33.    Clinical evidence demonstrates that cosmetic material applied externally to the eye area frequently migrates across the eyelid margin.[14]

34.    Cream cosmetic products formulated without water are anhydrous and are shown to have a higher migration rate when applied to the eye area than other formulations.  This excelled rate of migration is further heightened for persons with oily skin types or extra folds of eyelid skin.[15]  Multiple Revolution Eye Makeup Products are formulated without water, thus making them especially dangerous for use in the eye area due to the presence of Harmful Ingredients.

35.    If a cosmetic product containing a color additive with harmful impurities is applied to the eye area, the harmful impurities frequently migrate across the eyelid margin into the eye and/or penetrate through thin eye area skin tissue, creating the potential for dangerous side effects.[16]

---

[14] *See* Ng, Alison Ph.D.; Evans, Katharine Ph.D.; North, Rachel V. Ph.D.; Purslow, Christine Ph.D.. Migration of Cosmetic Products into the Tear Film. *Eye & Contact Lens: Science & Clinical Practice* 41(5):p 304-309, September 2015. | DOI: 10.1097/ICL.0000000000000124; *see also* Goto T, Zheng X, Gibbon L, Ohashi Y. Cosmetic product migration onto the ocular surface: exacerbation of migration after eyedrop instillation. Cornea. 2010 Apr;29(4):400-3. doi: 10.1097/ICO.0b013e3181bd4756. PMID: 20168215.

[15] *See* Draelos ZD. Eyelash Cosmetics. In: Cosmetics in Dermatology. New York, NY, Churchill Livingstone, 1995. pp. 41–52.

[16] *See* Ng, Alison Ph.D.; Evans, Katharine Ph.D.; North, Rachel V. Ph.D.; Purslow, Christine Ph.D.. Migration of Cosmetic Products into the Tear Film. *Eye & Contact Lens: Science & Clinical Practice* 41(5):p 304-309, September 2015. | DOI: 10.1097/ICL.0000000000000124; *see also* Goto T, Zheng X, Gibbon L, Ohashi Y. Cosmetic product migration onto the ocular surface: exacerbation of migration after eyedrop instillation. Cornea. 2010 Apr;29(4):400-3. doi: 10.1097/ICO.0b013e3181bd4756. PMID: 20168215.

36.    Adverse side effects associated with use of cosmetics containing color additives unsafe for the eye area include posterior blepharitis, ocular surface irritation, tear film instability, conjunctival pigmentation, corneal epithelium inflammation, blepharitis, ocular irritation and/or pain, allergic dermatitis, and keratitis.[17]

37.    The Harmful Ingredients can cause physical injuries including eye pain, redness, itching, skin irritation, rashes, and skin staining, and can cause damage through their toxicity when they enter the body.  Indeed, many of the Harmful Ingredients are eye irritants and can cause serious eye irritation.

38.    For example, D&C Red No. 7 is classified as an eye irritant and "causes serious eye irritation."[18]  If Red 7 comes into contact with one's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[19]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention"[20]

39.    D&C Red No. 27 is classified as an eye irritant and "causes eye irritation."[21]  If Red 27 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[22]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for

---

[17] *See* Gao Y, Kanengiser BE. Categorical evaluation of the ocular irritancy of cosmetic and consumer products by human ocular instillation procedures. *J Cosmet Sci*. 2004 Jul-Aug;55(4):317-25. PMID: 15386023.; *see also* Platia EV, Michels RG, Green WR. Eye-cosmetic-Malik A, Claoué C. Transport and interaction of cosmetic product material within the ocular surface: beauty and the beastly symptoms of toxic tears. *Cont Lens Anterior Eye*. 2012 Dec;35(6):247-59. doi: 10.1016/j.clae.2012.07.005. Epub 2012 Aug 11. PMID: 22890123.; Coroneo MT, Rosenberg ML, Cheung LM. Ocular effects of cosmetic products and procedures. *Ocul Surf*. 2006 Apr;4(2):94-102. doi: 10.1016/s1542-0124(12)70031-9. PMID: 16681080.

[18] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.007LC0-SDS.pdf.

[19] *Id.*

[20] *Id.*

[21] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.027LM0-SDS.pdf.

[22] *Id.*

thorough irrigation [and g]et immediate medical attention"[23]  Additionally, Red 27 "may be cytotoxic, mutagenic, and inhibit certain mitochondrial functions."[24]

40.     D&C Red No. 28 "[c]auses serious eye irritation."[25]  If Red 28 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[26]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[27]

41.     FD&C Yellow No. 6 is "hazardous in case of eye contact (irritant)" and is acutely toxic when orally ingested.[28]  Safety sheets instruct handlers of Yellow 6 to "avoid contact with eyes." [29]  In the event of eye contact, one should "check for and remove any contact lenses[, and i]mmediately flush eyes with running water for at least 15 minutes, keeping eyelids open." [30] Then, he or she should "seek medical attention."[31]

42.     D&C Yellow No. 10 is also associated with eye irritation.[32]  In the event of eye contact, one should "flush eyes with water for 15 minutes[, g]et medical attention if irritation occurs[, and, i]f symptoms persist, call a physician." [33]

43.     FD&C Red No. 4 "causes eye irritation."[34]  If Red No. 4 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove

---

[23] Id.

[24] https://pubchem.ncbi.nlm.nih.gov/compound/D-_-C-Red-no.-27.

[25] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.028000-SDS.pdf.

[26] Id.

[27] Id.

[28] https://www.geneseo.edu/sites/default/files/users/247/Yellow%206.pdf.

[29] Id.

[30] Id.

[31] Id.

[32] https://www.spectrumchemical.com/media/sds/DC200_AGHS.pdf.

[33] Id.

[34] https://avitar-chemical.com/wp-content/uploads/2020/06/SDS-FDC-Red-No-4.pdf.

contact lenses if present and easy to do[, and c]ontinue rinsing."[35]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention." [36]

44.    D&C Red No. 6, "causes eye irritation."[37]   If Red No. 6 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing." [38]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[39]

45.    Safety data sheets instruct handlers of D&C Red No. 17 to "avoid contact with skin and eyes"[40]  "Eye wash facilities and emergency shower must be available when handling this product."[41]  "Solid particles trapped behind the eyelid may cause abrasive damage." [42]  Red 17 "[m]ay be slightly irritating to eyes." [43]  In the event of eye contact, one should "rinse immediately with plenty of water," "remove any contact lenses and open eyelids wide apart," "continue to rinse for at least 15 minutes," and "get medical attention if any discomfort continues." [44]

46.    D&C Red No. 21 is classified as an eye irritant and "causes serious eye irritation." [45]  If Red 21 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue

---

[35] *Id.*

[36] *Id.*

[37] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.006LM0-SDS.pdf.

[38] *Id.*

[39] *Id.*

[40] https://www.univarsolutions.co.uk/proxy/index/index/?e=0%3A3%3AGojX1BDc4Uci9TcgVcR5%2FbgXGVsUqlY1trg0btLyC856StqALW0eowzr45PDzW4TlW1Oq0oexp6Guae5yxb0vPiPUhCcj3KymY5wywkg080TbH3fcgUGkOmDW6jBbQZSaRPN9Fxr0Bneb56MyTh1USIjcvDyWj1s83p9wNqN7QqQBe9Xnd6J0pk%3D.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.021LM0-SDS.pdf.

rinsing."[46]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[47]

47.     D&C Red No. 30 is classified as an eye irritant and "causes serious eye irritation."[48] If Red 30 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[49]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[50]

48.     D&C Red No. 33 "causes serious eye irritation."[51]  If Red 33 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[52]   Then, he or she should "flush eyes with cool water for 15 minutes, [and g]et medical attention."[53]

49.     D&C Violet No. 2 "causes serious eye irritation." [54] If Violet 2 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[55] Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[56]

50.     D&C Yellow No. 8 "may cause eye and skin irritation."[57]  If Yellow 8 comes into contact with somebody's eyes, he or she should "flush eyes with plenty of water for at least 15

---

[46] *Id.*

[47] *Id.*

[48] https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.030LT0-SDS.pdf.

[49] *Id.*

[50] *Id.*

[51] https://www.spectrumchemical.com/media/sd/DC145_SD.pdf.

[52] *Id.*

[53] *Id.*

[54] https://spectracolors.com/wp-content/uploads/2017/04/7.FD_.0020E0-SDS.pdf.

[55] *Id.*

[56] *Id.*

[57] https://pim-resources.coleparmer.com/sds/24609.pdf.

minutes, occasionally lifting the upper and lower eyelids."[58]  "If irritation develops, [he or she should] get medical aid."[59]

51.     Users of D&C Yellow No. 10 should avoid "skin and eye contact."[60] In the event of eye contact, users should "make sure to remove any contact lenses from the eyes before rinsing[, r]inse the eye with water immediately[, c]ontinue to rinse for at least 15 minutes[, and g]et medical attention if any discomfort continues."[61]

52.     D&C Yellow No. 11 is "irritating to eyes."[62] In the event of eye contact, one should "immediately flush with plenty of water for up to 15 minutes[while r]emov[ing] any contact lenses and open[ing] eyes wide apart."[63]

53.     D&C Orange No. 4 "causes serious eye irritation."[64]  If Orange 4 comes into contact with somebody's eyes, that person should "rinse cautiously with water for several minutes[, r]emove contact lenses if present and easy to do[, and c]ontinue rinsing."[65]  Then, he or she should "flush with plenty of cool water for at least 15 minutes, holding eyelids apart for thorough irrigation [and g]et immediate medical attention."[66]

54.     If D&C Green No. 8 comes into contact with somebody's eyes, that person should "flush with plenty of water or eye wash solution for several minutes[, and s]eek medical attention if

---

[58] *Id.*

[59] *Id.*

[60] https://safety365.sevron.co.uk/substances/accessSDS/SDS-49777-57bebdf5052649.89556561.

[61] *Id.*

[62] https://safety365.sevron.co.uk/substances/accessSDS/SDS-1397-572b31f54b6746.44957127.

[63] *Id.*

[64] https://spectracolors.com/wp-content/uploads/2017/04/2.FD_.004000-SDS.pdf.

[65] *Id.*

[66] *Id.*

1  irritation persists."[67] "Contact [of Green 8]with eyes may cause irritation."[68]  Notably, "the most

2  significant routes of overexposure for this product are by contact with skin or eyes."[69]

3     55.   FD&C Green No. 3 "may cause temprorary eye irritation."[70]  If Green 3 comes into

4  contact with somebody's eyes, that person should "rinse immediately with plenty of water[,

5  r]emove any contact lenses and open eyelids wide apart[, and c]ontinue to rinse for at least 15

6  minutes."[71] Further, they should "get medical attention if any discomfort continues."[72]

7     56.   D&C Brown No. 1 is a "moderate eye irritant" and "causes severe eye irritation."[73]

8  "In case of eye contact" one should "immediately rinse eyes with plenty of water for at least 15

9  minutes[ and c]onsult a physician."[74]

10    57.   If a Product palette contains even one Harmful Ingredient, the *entire* palette is

11  unsafe and unfit for use in the eye area, even if an individual color in that palette does not contain

12  any Harmful Ingredients.  Reasonable consumers do not know which of the various colors in a

13  given palette contain Harmful Ingredients, and therefore use the colors interchangeably.  Colors

14  within a given palette tend to cross-contaminate other colors within the palette through the

15  reasonable and expected use of the palette.  No reasonable consumer would buy the Products if

16  they knew that even one of the colors within the palette contained Harmful Ingredients.

---

[67]
https://www.praannaturals.com/downloads/msds/SDS_DC_Green_No_8_Color_Additive_DCGRE
EN8US75.pdf.

[68] *Id.*

[69] *Id.*

[70]
https://www.univarsolutions.co.uk/proxy/index/index/?e=0%3A3%3A5NAo97CdT0czy5tIPtZPUp
8slvKvfilyNfxsZ2XvPfJ0iIEpJN5P9QBff5%2FKiGsNL%2B1jkFGe3K%2FmVf%2FvhtzciwehK
AXewy2Is2gW2tgr6oTT6AjN9mhxPEIH894bvJzZm%2FqboWqZtbr03iil0Q4fbQa9%2BvrAGuX
Po22XbdtRoGyr3P5LVJaG3fs%3D.

[71] *Id.*

[72] *Id.*

[73] https://www.trc-canada.com/prod-img/MSDS/A189955MSDS.pdf

[74] *Id.*

58.     Revolution knows that these products are used in the eye area, and intentionally markets them for such purpose. But each of the Products is formulated with and contains one or more of the Harmful Ingredients.

59.     Further, many Revolution Eye Makeup products were sold with no disclaimer whatsoever even though they are formulated with Harmful Ingredients.  For example, Defendant's webpage for its "I Heart Revolution Burger Shadow Palette" Product (which contains the Harmful Ingredients Red 6 and Red 7) does not include any warning language, purported disclaimers, or online statements that suggest or otherwise indicate that the product contains Harmful Ingredients (nor does its physical packaging).[75]  It did, however, list the product in the "Eyes" makeup category:



60.     Since receiving a demand letter from Plaintiff, Revolution has removed the "eye" category language and added disclaimers about the danger of using the Products in the eye area on some of its product pages.  For example, on the "I Heart Revolution Burger Shadow Palette" product page, Revolution now has a disclaimer that "*PRESSED PIGMENTS CONTAIN

[75] https://www.revolutionbeauty.us/i-heart-burger-eye-shadow-palette/12656831.html (last accessed July 29, 2022).  Since this screenshot was collected, Defendant has updated its website as described *supra* ¶¶ 25-26.  This screenshot was kept in to reflect how the website appeared throughout the class period.

1    INGREDIENTS WHICH ARE NOT PERMITTED FOR USE AROUND THE EYE AREA IN

2    THE USA. WE RECOMMEND CHECKING THE PRODUCT PACKAGING FOR THE

3    LATEST INGREDIENTS."[76]  However, the URL for this product page still contains the phrase

4    "eye-shadow-palette," and the "PRODUCT OVERVIEW" does not suggest anywhere else that the

5    Product could be used other than in the eye area[77]:



---

[76] https://www.revolutionbeauty.us/i-heart-burger-eye-shadow-palette/12656831.html (Screenshot taken October 4, 2022).

[77] *Id.*

1   *Plaintiff's Experience*

2        61.     Plaintiff Wilson purchased Defendant's "I Heart Revolution Burger Shadow

3   Palette," ("Plaintiff's Purchased Product") for personal cosmetic use in or around .  Plaintiff

4   purchased the Product within the past 5 years from the Ulta Beauty website.  Plaintiff's most recent

5   purchase occurred in 2021.

6        62.     Plaintiff Wilson believed that Plaintiff's Purchased Product was safe for its intended

7   use, namely for use around the eye area.

8        63.     Plaintiff Wilson reasonably relied on Defendant's representations and omissions

9   when she decided to purchase Plaintiff's Purchased Product for use in the eye area, and

10  subsequently use Plaintiff's Purchased Product in the eye area.

11       64.     At the time of purchase, Plaintiff Wilson was not aware of any warnings, safety

12  issues, or instructions for use indicating that the Products are not safe or fit for use in the eye area.

13       65.     Similarly, Plaintiff Wilson was not aware of any warnings or disclosures that the

14  Plaintiff's Purchased Product contains color additives that are not safe or fit for use in the eye area.

15       66.     The Product Plaintiff purchased, like all of the Products at issue in this case are and

16  were: (1) advertised and marketed by Defendant for cosmetic use on the eye area; (2) advertised,

17  marketed, packaged, and sold to be indistinguishable from eyeshadow or eyeliner product; (3)

18  designed, formulated, and/or manufactured with Harmful Ingredients which render them unsafe

19  and unfit for their intended use and purpose (cosmetic application to the eye area); (4) designed,

20  formulated, and manufactured with substandard materials and/or construction which results in them

21  being unsafe and unfit for their intended use and purpose; and (5) Defendant deceptively omitted

22  and concealed these and other material facts from Plaintiff Wilson and other reasonable consumers.

23       67.     As a result of Defendant's deceptive misrepresentations and fraudulent business

24  practices, Plaintiff Wilson suffered injury and loss of money, including but not limited to: (1)

25  Plaintiff Wilson did not receive any of the advertised benefits as described above; (2) Plaintiff

26  Wilson paid for a Revolution Eye Makeup Product that is unsafe by virtue of its design,

27  formulation, construction, or workmanship; and (3) Plaintiff Wilson paid more for a Revolution

28

Eye Makeup product than it is worth because the Products, by virtue of being formulated with and/or containing Harmful Ingredients, is unsafe and unfit to use for its sole intended purpose.

68.     If Plaintiff Wilson had known that the Products are unfit for their intended use and defective, and that the representations made by Defendant are false and misleading, she would not have purchased the Product or would have paid substantially less than she did.  Therefore, Plaintiff Wilson did not receive the benefit of her bargain.

69.     Plaintiff was further damaged because upon discovering that the Products are unfit for their intended use and defective, and that the representations made by Defendant are false and misleading, she had to cease using the Product she had already purchased.  Plaintiff still has unused Product in her possession.  Because of the Defect, Plaintiff cannot use her remaining Product and, accordingly, suffered economic loss.

70.     Plaintiff will be unable to rely on the Products' marketing and advertising in the future, and so will be unable to purchase the Products in the future, although she would like to if they were reformulated to remove the Harmful Ingredients.  Plaintiff continues to purchase eye makeup products, although she does not currently purchase the Products, and intends on purchasing eye makeup products in the future.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action individually and as representatives of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the below-defined Class and Subclass:

**Class**:
All persons residing in the United States who purchased Revolution Eye Makeup containing Harmful Ingredients during the maximum period permitted by law.

**California Subclass**:
All members of the Class who purchased Revolution Eye Makeup containing Harmful Ingredients in California during the maximum period permitted by law.

72.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

73.    **Numerosity**: The Members of the Classes are so numerous that joinder of all Members is impracticable.  While the exact number of putative Class Members is presently unknown, it likely consists of tens of thousands of people geographically disbursed throughout the United States.  The number of putative Class Members can be determined by sales information and other records in Defendant's possession.  Moreover, joinder of all putative Class Members is not practicable given their numbers and geographic diversity.  The Classes are readily identifiable from information and records in the possession of Defendant and their authorized retailers.

74.    **Typicality**: The claims of the representative Plaintiff are typical in that Plaintiff, like all putative Class Members, purchased Revolution Eye Makeup that was designed, formulated, manufactured, marketed, advertised, distributed, and sold by Defendant. Plaintiff, like all putative Class Members, has been damaged by Defendant's misconduct in that, inter alia, Plaintiff incurred or will continue to incur damages as a result of overpaying for defective Revolution Eye Makeup Products that are inherently dangerous and not fit for their intended use. Furthermore, the factual basis of Defendant's misconduct is common to all putative Class Members because Defendant has engaged, and continues to engage, in systematic fraudulent behavior that was and is deliberate, includes negligent misconduct, and results in the same injury to all putative Class Members.

75.    **Commonality**: Common questions of law and fact exist as to all putative Class Members.  These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Classes.  Such common legal or factual questions include, inter alia:

(a)    Whether Revolution Eye Makeup is defective;

(b)    Whether Revolution Eye Makeup is misleadingly marketed, packaged, labeled and/or sold for use in the eye area when it is not fit for that purpose;

(c)    Whether Revolution Eye Makeup is defectively designed and/or manufactured;

(d)    Whether Revolution Eyes Makeup is dangerous;

(e)    Whether Defendant knew or reasonably should have known about the Defect prior to distributing and selling Revolution Eye Makeup to Plaintiff and the putative Classes;

(f)     Whether Defendant knew or reasonably should have known Revolution Eye Makeup was dangerous when Defendant packaged, marketed, advertised, specified, instructed, encouraged, and otherwise represented that Revolution Eye Makeup was intended for use in the eye area;

(g)     Whether Defendant concealed from, omitted, and/or failed to disclose to Plaintiff and the putative Classes the dangers associated with Revolution Eye Makeup as a result of the Products' Harmful Ingredients;

(h)     Whether Defendant breached the implied warranty of merchantability and the Song-Beverly Consumer Warranty Act, relating to Revolution Eye Makeup;

(i)     Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Revolution Eye Makeup;

(j)     Whether Defendant violated Cal. Bus. & Prof. Code § 17500, *et seq*. (FAL);

(k)     Whether Defendant violated Civil Code §§ 1750, *et seq*. (CLRA);

(l)     Whether Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq*. (UCL);

(m)    Whether Plaintiff and the putative Classes are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of any such damages;

(n)     Whether Defendant should be enjoined from selling and marketing Revolution Eye Makeup containing Harmful Ingredients;

(o)     Whether Defendant should be enjoined from selling, promoting, and advertising that Revolution Eye Makeup is safe and fit for use in the eye area when, in fact, the Products contain color additives that are prohibited for use in the eye area, i.e. the Harmful Ingredients; and

(p)     Other issues which may be revealed in discovery.

76.     **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of putative Class Members. Plaintiff has no interests that are antagonistic to those of putative Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions,

including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

77.     **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met.  Defendant will continue to commit the unlawful practices alleged herein, and putative Class Members will remain at an unreasonable and serious safety risk as a result of the Defect.  Defendant has acted and refused to act on grounds that apply generally to the putative Classes, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

78.     **Predominance and Superiority**: Plaintiff and putative Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, putative Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of putative Class Members' individual claims, it is likely that few putative Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, putative Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

79.     Plaintiff is not aware of any potential issues that would preclude the maintenance of this class action.

80.     Defendant has acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the putative Classes appropriate.

### COUNT I
### Breach of Implied Warranty
### (Individually and on behalf of the Classes)

81.     Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

82.     Plaintiff brings this cause of action against Defendant individually and on behalf of the Classes under California law.

83.     As described above, Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's conduct.

84.     Defendant was at all relevant times the manufacturer, distributor, warrantor, merchant, and/or seller of the Revolution Eye Makeup.  Defendant knew or had reason to know of the specific use for which the Revolution Eye Makeup was purchased, as evidenced by Defendant's marketing efforts, website(s), social media accounts, advertisements, and other statements that promote and encourage consumers to use the Products in the eye area.

85.     By placing the Revolution Eye Makeup into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that Revolution Eye Makeup was merchantable and fit for the ordinary purposes for which it was sold.

86.     However, the Revolution Eye Makeup is not fit for its ordinary purpose—use in the eye area—because it contains the Harmful Ingredients.

87.     The Harmful Ingredients contained in Revolution Eye Makeup prevent the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied warranty of merchantability.  These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that Revolution Eye Makeup is not safe to use in the eye area. Defendant impliedly warranted that Revolution Eye Makeup was of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that Revolution Eye Makeup manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for use as eyeshadow, eyeliner, or other cosmetic use in the eye area; and (ii) a warranty that Revolution Eye Makeup would be fit for its principal and intended use as eye makeup.

88.     Contrary to the applicable implied warranties, Revolution Eye Makeup, at the time of sale and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area without risk of

injury.  Instead, Revolution Eye Makeup suffers from a defective design and/or defective manufacturing, as alleged herein.

89.    Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia.

90.    The Revolution Eye Makeup was defective at the time of sale when it left the exclusive control of Defendant or its agents.

91.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product.  Moreover, Defendant exercised substantial control over which outlets can carry and sell Revolution Eye Makeup, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell it on an individual basis to consumers.  Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased Revolution Eye Makeup.

92.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for—the products are worthless or worth far less than Defendant represents due to the Defect.

93.    Defendant was provided extensive pre-suit notice of the Defect, and as such has been afforded a reasonable opportunity to cure its breach of warranty.  Any additional time to do so would be unnecessary and futile because Defendant has known of and concealed the Defect and has refused to repair or replace the defect free of charge.

94.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

95.    As a result of the breach of the implied warranty of merchantability, Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages,

attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II
### Breach of Implied Warranty Under the Song-Beverly Consumer Warranty Act
### California Civil Code §§ 1790, *et seq.*
### (Individually and on behalf of the Classes)

96.     Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

97.     Plaintiff brings this cause of action against Defendant individually and on behalf of the Classes.

98.     As described above, Plaintiff has standing to pursue this claim because Plaintiff has suffered an injury-in-fact and has lost money or property as a result of Defendant's conduct.

99.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act.

100.    Defendant is in the business of manufacturing, assembling, producing and/or selling the Revolution Eye Makeup to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

101.    Defendant knew or had reason to know of the specific use for which the Revolution Eye Makeup was purchased, as evidenced by Defendant's marketing efforts, website(s), social media accounts, advertisements, and other statements that promote and encourage consumers to use the Products in the eye area.

102.    By placing the Revolution Eye Makeup into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that Revolution Eye Makeup was merchantable and fit for the ordinary purposes for which it was sold.

103.    However, the Revolution Eye Makeup is not fit for its ordinary purpose—use in the eye area—because it contains the Harmful Ingredients.

104.    The Harmful Ingredients contained in Revolution Eye Makeup prevent the Products from being safely used for their intended purpose, and thus constitutes a breach of the implied

warranty of merchantability.  These problems are caused and exacerbated by Defendant's failure to adequately disclose to or warn Plaintiff and consumers of the Defect and that Revolution Eye Makeup is not safe to use in the eye area.  Defendant impliedly warranted that Revolution Eye Makeup was of merchantable quality and fit for such use.  These implied warranties included, among other things: (i) a warranty that Revolution Eye Makeup manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for use as eyeshadow, eyeliner, or other cosmetic use in the eye area; and (ii) a warranty that Revolution Eye Makeup would be fit for its principal and intended use as eye makeup.

105.    Contrary to the applicable implied warranties, Revolution Eye Makeup, at the time of sale and thereafter, was not fit for its ordinary and intended purpose of providing Plaintiff and Class Members with a cosmetic product that can be safely applied to the eye area without risk of injury.  Instead, Revolution Eye Makeup suffers from a defective design and/or defective manufacturing, as alleged herein.

106.    Defendant's actions, as complained of herein, breached the implied warranties that Revolution Eye Makeup was of merchantable quality and fit for such use.  *See* Cal. Civ. Code §§ 1791.1 and 1792.

107.    The Revolution Eye Makeup was defective at the time of sale when it left the exclusive control of Defendant or its agents.

108.    Defendant's intended beneficiaries of its implied warranties were ultimately Plaintiff and members of the Classes, not third-party retailers, resellers, or distributors who sold the product.  Moreover, Defendant exercised substantial control over which outlets can carry and sell Revolution Eye Makeup, which are the same places that Plaintiff and Class Members purchased the Products.  In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers, or distributors who purchase the Products in bulk and then sell it on an individual basis to consumers.  Accordingly, these warranties are specifically designed to benefit the individual consumers who purchased Revolution Eye Makeup.

109.    Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have

otherwise paid.  Plaintiff and the Class also did not receive the value of the product they paid for—the products are worthless or worth far less than Defendant represents due to the Defect.

110.    Plaintiff and the Classes have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

111.    Plaintiff and the Class Members seek all relief available under the Song-Beverly Act.

112.    Plaintiff and Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

**COUNT III**
**(IN THE ALTERNATIVE)**
**Unjust Enrichment or Restitution**
**(Individually and on behalf of the Classes)**

113.    Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

114.    This alternative claim is asserted on behalf of Plaintiff and Class Members to the extent there is any determination that any warranties extended to Plaintiff and Class Members by Defendant do not govern the subject matter of the disputes with Defendant, or that Plaintiff does not have standing to assert such claims against Defendant.  Plaintiff asserts this claim under California law.

115.    Plaintiff and Class Members conferred a monetary benefit on Defendant, and Defendant received and had knowledge of this benefit.

116.    By their wrongful acts and omissions described herein, including selling Defective Revolution Eye Makeup, Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

117.    Plaintiff and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct alleged herein.

118.    Defendant has profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Class Members under circumstances in which it would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct, as described herein in connection with selling the defective Revolution Eye Makeup.

119.    Plaintiff and Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Revolution Eye Makeup on the same terms or for the same price if they had known that the Products were defective or contained dangerous and harmful ingredients at the time of purchase.

120.    Defendant either knew or should have known that payments rendered by Plaintiff and Class Members were given and received with the expectation that Revolution Eye Makeup was free of defects and was capable of providing the benefits represented by Defendant in the labeling, marketing, and advertising of the Products.  It is inequitable for Defendant to retain the benefit of payments under these circumstances.

121.    Plaintiff and Class Members seek restitution from Defendant and an order from this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from their wrongful conduct and establishing a constructive trust from which Plaintiff and Class Members may seek restitution.

122.    When required, Plaintiff and Class Members are in privity with Defendant because Defendant's sale of Revolution Eye Makeup was either direct or through authorized third-party retailers and resellers.  Purchases through authorized retailers and resellers are sufficient to create privity because authorized third parties are Defendant's agents for the purpose of selling Revolution Eye Makeup.

123.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

124.   Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims for restitution entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

**COUNT IV**
**Violation of the California False Advertising Law ("FAL")**
**California Business and Professions Code §§ 17500, *et seq.***
**(Individually and on behalf of the Classes)**

125.   Plaintiff reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

126.   Plaintiff brings this cause of action against Defendant individually and on behalf of the Classes.

127.   The conduct described herein took place within the state of California and constitutes deceptive or false advertising in violation of California Business and Professions Code §§ 17500, *et seq*.

128.   California Business and Professions Code §§ 17500, *et seq*. prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

129.    Defendant, when it marketed, advertised, and sold Revolution Eye Makeup, represented to Plaintiff and Class Members that Revolution Eye Makeup was free of defects and safe when, in reality, the Products contained Harmful Ingredients that render them defective and unsafe.

130.    At the time of their misrepresentations and/or omissions, Defendant was either aware that Revolution Eye Makeup was defective and unsafe or was aware that it lacked the information and/or knowledge required to make such a representation truthfully.  Defendant concealed, omitted, and failed to disclose this information to Plaintiff and Class Members.

131.    Defendant's packaging and product descriptions were false, misleading, and likely to deceive Plaintiff and other reasonable consumers about the true nature of Revolution Eye Makeup and the fact that it should not be used in the eye area.

132.    Defendant's conduct therefore constitutes deceptive or misleading advertising.

133.    Plaintiff Wilson has standing to pursue claims under the FAL because she reasonably reviewed and relied on Defendant's packaging, advertising, representations, and marketing materials when selecting and purchasing Revolution Eye Makeup.

134.    In reliance on the statements made in Defendant's advertising and marketing materials, and Defendant's omissions and concealment of material facts regarding the quality and use of Revolution Eye Makeup, Plaintiff and Class Members purchased Revolution Eye Makeup.

135.    Had Defendant disclosed the true defective nature of Revolution Eye Makeup, Plaintiff and Class Members would not have purchased the Products or would have paid substantially less for them.

136.    Upon discovering the true defective nature of Revolution Eye Makeup, Plaintiff stopped using the Products and still has unused Products in her possession.  Because of the Defect, Plaintiff cannot use the remaining Products and, accordingly, suffered economic loss.

137.    As a direct and proximate result of Defendant's actions, as set forth herein, Defendant has received ill-gotten gains and/or profits, including but not limited to money from Plaintiff Wilson and Class Members who purchased Revolution Eye Makeup.

138.    Plaintiff and Class Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendant by means of their deceptive or misleading representations, including monies already obtained from Plaintiff and Class Members as provided for by the California Business and Professions Code §§ 17500, *et seq*.

139.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the FAL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

## COUNT V
### Violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.* (Individually and on behalf of the Classes)

140.    Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

141.    Plaintiff Wilson brings this cause of action individually and on behalf of the Classes.

1    142.    The conduct described herein took place in the state of California and constitutes

2    unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal

3    Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*

4    143.    Plaintiff and California Class Members are "consumers" as defined by Civil Code §

5    1761(d) because they purchased Revolution Eye Makeup for personal or household use.

6    144.    Defendant is a "person" as defined by Civil Code § 1761(c).

7    145.    The Products are "goods" as defined by Civil Code § 1761(a).

8    146.    Plaintiff and Class Members' purchases of Revolution Eye Makeup are

9    "transactions" as defined by Civil Code 25 § 1761(e).

10    147.    As set forth below, the CLRA deems the following unfair methods of competition

11    and unfair or deceptive acts or practices undertaken by any person in a transaction intended to

12    result or which does result in the sale or lease of goods or services to any consumer as unlawful.

13
14    (a) "Representing that goods … have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

15
16    (b) "Representing that goods … are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

17    148.    Defendant engaged in unfair competition or unfair or deceptive acts or practices in

18    violation of Civil Code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and

19    other express representations, that Revolution Eye Makeup had benefits or characteristics that it did

20    not actually have. In reality, the Products are defective, are unsafe, and unfit for their principal

21    intended purpose.

22    149.    As detailed in the body of this complaint, Defendant has repeatedly engaged in

23    conduct that violates the CLRA and has made false representations and statements to consumers

24    about Revolution Eye Makeup's benefits, characteristics, and quality.  Indeed, Defendant

25    concealed, omitted, and failed to disclose information and facts about the Products which are

26    material to Plaintiff and California Class Members.

27

28

150.   Revolution Eye Makeup was not and is not "reliable," in that the product is not safe and is of inferior quality and trustworthiness compared to other products in the industry.  As detailed above, Defendant further violated the CLRA when they falsely represented that Revolution Eye Makeup meets a certain standard or quality.

151.   As detailed above, Defendant violated the CLRA when they advertised Revolution Eye Makeup with the intent not to sell the Product as advertised and knew that Revolution Eye Makeup was not as represented.

152.   Defendant's deceptive practices were specifically designed to induce Plaintiff and Class Members to purchase Revolution Eye Makeup for use in the eye area.

153.   Defendant engaged in uniform marketing efforts in order to reach and persuade Plaintiff and Class Members to purchase Revolution Eye Makeup for use in the eye area. Defendant's packaging, advertising, marketing, website, and retail product identification and specifications, contain numerous omissions as well as false and misleading statements regarding the quality, safety, and reliability of Revolution Eye Makeup for use in the eye area.

154.   Despite Defendant's omissions and representations, Defendant also concealed information and material facts from Plaintiff Wilson and Class Members, who reasonably relied on Defendant's representations and omissions of material facts.

155.   Defendant's business practices are misleading and/or likely to mislead reasonable consumers and should be enjoined.

156.   On July 28, 2022, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a). The letter also provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.

157.   In accordance with Civil Code § 1780(a), Plaintiff and Class Members seek damages and injunctive and equitable relief for Defendant's violations of the CLRA, including an

1   injunction to enjoin Defendant from continuing their deceptive advertising and sales practices, and

2   compensatory and punitive damages.

3        158.   Plaintiff also seeks punitive damages.  Defendant's conduct in deceiving customers

4   and the public, including Plaintiff, about the serious health consequences of using Revolution Eye

5   Makeup for its intended purpose, concealing material information about the Products' ingredients,

6   and continuing to launch new products with the identical safety defect, even after Plaintiff put

7   Defendant on notice of the dangers, constituted a conscious disregard or indifference to the life,

8   safety, or rights of persons exposed to such conduct.

9        159.   Defendant actively and knowingly participated in the dissemination of

10  misrepresentations and concealment of material information related to the Products.

11       160.   Defendant's malicious and fraudulent conduct must be punished to deter future

12  harm to others.  Therefore, exemplary damages are appropriate under that the circumstances.

13       161.   Defendant has significant relationships with the State of California in regard to the

14  conduct giving rise to punitive damages and the law applicable to this particular issue.

15       162.   The malicious conduct described herein occurred and arose from Defendant's

16  headquarters in California from where Defendant made corporate decisions related to selling,

17  promoting, advertising, and labeling the Products.  Therefore, Cal. Civ. Code § 3294 applies to the

18  punitive damages' aspect of this case.

19       163.   Pursuant to California Civil Code § 1780(a)(1)-(5) and § 1780(e), Plaintiff seeks

20  damages, an order enjoining Defendant from the unlawful practices described above, a declaration

21  that Defendant's conduct violates the Consumers Legal Remedies Act, reasonable attorneys' fees

22  and litigation costs, and any other relief the Court deems proper under the CLRA.

23                              **COUNT VI**
    **Violations of the California Unfair Competition Law ("UCL"),**
24  **Cal. Bus. & Prof. Code §§ 17200, *et seq.***
    **(Individually and on behalf of the Classes)**
25

26       164.   Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and

27  incorporates such allegations by reference as if fully set forth herein.

28

165.    Plaintiff Wilson brings this cause of action individually and on behalf of the Classes.

166.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

167.    Plaintiff Wilson and Class Members suffered an injury, by virtue of purchasing defective cosmetic products, because Defendant misrepresented and/or omitted material facts about the Products' true quality, reliability, safety, use, and ingredients.

168.    Had Plaintiff Wilson and Class Members known about Defendant's misrepresentations and/or omissions of material fact, they would not have purchased the Products or would have paid significantly less for them.

169.    Upon discovering Defendant's misrepresentations and/or omissions of material fact, Plaintiff stopped using the Products and still has unused Products in her possession.  Because of the Defect, Plaintiff cannot use the remaining Products and, accordingly, suffered economic loss.

170.    Defendant's conduct, as alleged herein, violates the laws and public policies of California, as set out in the preceding paragraphs of this complaint.

171.    There is no benefit to consumers or competition by allowing Defendant to deceptively label, market, and advertise the Products.

172.    Plaintiff Wilson and Class Members had no way of reasonably knowing that Revolution Eye Makeup was deceptively packaged, marketed, advertised, and labeled, or that Revolution Eye Makeup was defective, unsafe, and unsuitable for its intended use.  Thus, Plaintiff Wilson and Class Members could not have reasonably avoided the harm they suffered. Further, this harm outweighs any legitimate justification, motive, or reason for packaging, marketing, advertising, and labeling the Products in a deceptive and misleading manner.  Accordingly, Defendant's actions are immoral, unethical, unscrupulous, and offend well-established public policies.

173.    Unlawful Prong:  A business act or practice is unlawful pursuant to the UCL if it violates any other law or regulation.

174.    Defendant's conduct violates the Sherman Laws.  In addition to being inherently dangerous, each of the Harmful Ingredients is designated by the State of California as unsuitable

and unapproved for cosmetic use in the eye area through California's Sherman Food, Drug, and Cosmetic Laws, Cal. Health & Safety Code. §§ 109875, *et seq.* (the "Sherman Laws").

175. The Products are "cosmetics" and the Harmful Ingredients are "color additives" as defined by the Sherman Laws. *See* Cal. Health & Safety Code §§ 109900; 109895.

176. The Products are thus adulterated, misbranded, unsafe, and illegal to sell or advertise under the Sherman Laws. *See* Cal. Health & Safety Code § 111670 ("A cosmetic is adulterated if it bears or contains any poisonous or deleterious substance that may render it injurious to users under the conditions of use prescribed in the labeling or advertisement of the cosmetic, or under conditions of use as are customary or usual."); *id.* § 111695 ("Any cosmetic is adulterated if it is not a hair dye and it is, or it bears or contains, a color additive that is unsafe within the meaning of Section 111665."); *id.* § 111700 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any cosmetic that is adulterated."); *id.* § 111730 ("Any cosmetic is misbranded if its labeling is false or misleading in any particular."); *id.* § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.") *see also id.* § 111665. ("Any color additive shall be considered unsafe for use with respect to any cosmetic unless there is in effect a regulation adopted pursuant to Section 110090 that prescribes its use in cosmetics.").

177. Defendant's conduct also violates the CLRA.

178. Unfairness Prong: A business act or practice is unfair pursuant to the UCL if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

179. Defendant's unfair acts and practices include but are not limited to knowingly exposing consumers to unreasonable risk of injury by marketing and advertising the Products as eyeshadow and/or for use in the eye area when using the Products in this manner is inherently dangerous.

180. Fraudulent Prong: A business act or practice is fraudulent pursuant to the UCL if it is likely to deceive members of the public.

181. Defendant took active measures to deceive Plaintiff by representing that the Products were safe for their intended purpose through marketing and advertising communications

which instructs and encourages consumers to use the Products in an unsafe manner.  Plaintiff relied on these representations and omissions to her detriment.

182.    Defendant's actions, in disseminating misleading and deceptive statements to consumers throughout the state of California and nationwide, including Plaintiff Wilson and Class Members, were and are likely to deceive reasonable consumers by obfuscating and omitting the Products' true defective nature, and therefore constitute violations of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

183.    Plaintiff Wilson and Class Members seek injunctive relief prohibiting Defendant from continuing their unlawful, unfair, and fraudulent business practices, and all other equitable relief available to the fullest extent permitted by law.

184.    Plaintiff and Class Members are entitled to a full refund of the Products' purchase price because mislabeled cosmetics cannot legally be manufactured, advertised, distributed, or sold, and thus, Revolution Eye Makeup is worthless as a matter of law.

185.    Plaintiff and the members of the Class have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.  Legal remedies available to Plaintiff and Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief.  Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages.  Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.  Damages and restitution are not the same amount.  Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest.  Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize.  Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VII
### Fraud
### (Individually and on behalf of the Classes)

186.    Plaintiff Wilson reasserts the allegations set forth in all preceding paragraphs and incorporates such allegations by reference as if fully set forth herein.

187.    Plaintiff Wilson brings this cause of action individually and on behalf of the Classes under California law.

188.    As discussed above, Defendant provided Plaintiff and Class Members with materially false or misleading information about the Revolution Eye Makeup.  Specifically, Defendant instructed consumers to use the Products in the eye area and represented, through its advertising and other express representations that the Products were intended for cosmetic use on the eye area and/or that the products were safe for use in the eye area.

189.    Further, Defendant concealed, omitted, and failed to disclose information and facts about the Products which are material to Plaintiff and California Class Members, namely that the Products, which are advertised, packaged, marketed, and sold for use in the eye area, in fact are not safe for use in the eye area.

190.    Defendant knew about the Defect but nevertheless marketed, advertised, and sold Revolution Eye Makeup for use around the eyes and without warning consumers of the known dangers.

191.    The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the defective Products.

192.    The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

193.    As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

1

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

    a.   For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as Class Representative and Plaintiff's attorneys as Class Counsel;

    b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

    c.   For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

    d.   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    e.   For prejudgment interest on all amounts awarded;

    f.   For an order of restitution and all other forms of equitable monetary relief;

    g.   For injunctive relief as pled or as the Court may deem proper; and

    h.   For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 4, 2023               **BURSOR & FISHER, P.A**.

                            By:   */s/ Yeremey Krivoshey*

                            Yeremey Krivoshey (State Bar No. 295032)
                            1990 North California Blvd., Suite 940
                            Walnut Creek, CA 94596
                            Telephone: (925) 300-4455
                            Facsimile:  (925) 407-2700
                            E-mail: ykrivoshey@bursor.com

                            **BURSOR & FISHER, P.A.**
                            Matthew A. Girardi (*PHV* application forthcoming)
                            888 Seventh Avenue
                            New York, NY 10019
                            Telephone: (646) 837-7150
                            Facsimile:  (212) 989-9163
                            E-Mail: mgirardi@bursor.com

1
2
3
4
5
6

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Alan Gudino (SBN 326738)
agudino@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

7
8
9
10
11

**WILLETT & WILLETT, LLP**
James P. Willett, State Bar No. 88837
james@willettlaw.com
Allison R. Willett, State Bar No. 238430
allison@willettlaw.com
9171 Wilshire Blvd., Suite 500
Beverly Hills, California 90210
Telephone: (424) 276-0065
Fax: (424) 276-0151

12
13
14
15
16

**FARNESE P.C.**
Peter J. Farnese (SBN 251204)
pjf@farneselaw.com
700 S. Flower St., Suite 1000
Los Angeles, California 90017
Telephone: 310-356-4668
Facsimile: 310-388-1232

17

*Attorneys for Plaintiff*

18
19
20
21
22
23
24
25
26
27
28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Yeremey Krivoshey, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

3.      Plaintiff Kacey Wilson alleges that in 2021, made a purchase of Defendant's product that shipped to her home in this District.  *See*, *e.g.*, Compl. ¶¶ 4, 47.  Specifically, Plaintiff Wilson alleges that she purchased and used Defendant's "I Heart Revolution Burger Shadow Palette" eyeshadow palette, which contains the Harmful Ingredients and thus suffers from the Defect.  *Id.*  Plaintiff alleges that as a result of Defendant's deceptive misrepresentations and fraudulent business practices, Plaintiff Wilson suffered injury and loss of money, including but not limited to: (1) Plaintiff Wilson did not receive any of the advertised benefits as described above; (2) Plaintiff Wilson paid for a Revolution Eye Makeup Product that is unsafe by virtue of its design, formulation, construction, or workmanship; and (3) Plaintiff Wilson paid more for a Revolution Eye Makeup product than it is worth because the Products, by virtue of being formulated with and/or containing Harmful Ingredients, is unsafe and unfit to use for its sole intended purpose.  *Id.* ¶ 53.  Plaintiff alleges that had she known that the Products are unfit for their intended use and defective, and that the representations made by Defendant are false and misleading, she would not have purchased the Product or would have paid substantially less than she did.  *Id.* ¶ 54.  Plaintiff further alleges that upon discovering that the I Heart Revolution Burger Shadow Palette contains Harmful Ingredients, Plaintiff stopped using the Product and still has unused Product in her possession.  *Id.* ¶ 4.  Thus, Plaintiff alleges that because of the Defect, Plaintiff cannot use her remaining Product and, accordingly, suffered further economic loss.  *Id.*

1    I declare under the penalty of perjury under the laws of the United States and the State of

2    California that the foregoing is true and correct.  Executed on May 4, 2023 in Louisville, Kentucky.

3

4    _____/s/ *Yeremey Krivoshey*_____
     Yeremey Krivoshey

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28